NO. _____13-2189_____

# In The
# United States Court of Appeals
### For The Fourth Circuit

DAVID S. SCHWARTZ, et al.

Plaintiffs-Appellees

v.

RENT A WRECK OF AMERICA INC., et al.

Defendants-Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE  DISTRICT OF MARYLAND                    AT THE SOUTHERN DIVISION

APPELLEES' RESPONSE BRIEF

Roger C. Simmons, Esq.
Jacob I. Weddle, Esq.
GORDON & SIMMONS, LLC
1050 Key Parkway, Suite 101
Frederick, Maryland 21702
(301) 662-9122

Counsel for Appellees

## TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES ......................................... i-iii

JURISDICTIONAL STATEMENT ..................................... 1

STATEMENT OF THE ISSUES .................................... 1

STATEMENT OF THE CASE ..................................... 3

I.      The History, Relationship and Course of Dealings Between
        the Parties Leading Up to the First Jury Trial in April 2010 ....... 4

II.     The First Jury Trial in April 2010 ........................... 7

III.    This Court's Ruling on the First Appeal ...................... 8

IV.     RAWA Makes Its First Attempt to Terminate Mr. Schwartz's
        Implied, Royalty-Free, Lifetime Franchise Rights on Remand .... 10

V.      RAWA Petitions for Writ of Mandamus on the Backing of the Same
        Arguments Presented Here. RAWA's Writ of Mandamus Fails ... 14

VI.     RAWA Makes Its Second Attempt to Terminate Mr. Schwartz's
        Implied, Royalty-Free, Lifetime Franchise Rights on Remand. The
        District Court Rebuffs RAWA's Attempts to Use the 2011 Franchise
        Agreement as a Lever to Terminate Mr. Schwartz's Rights ...... 16

VII.    The Second Jury Trial in June 2013 .......................... 21

SUMMARY OF THE ARGUMENT .................................. 23

ARGUMENT ..................................................... 25

I.      Judge Messitte's Rulings Did Not Violate the Mandate Rule Because
        His Rulings Carried Out the Letter and
        Spirit of this Court's Opinion ............................... 25

A.    Mr. Schwartz's Rights Were Clearly Defined Under the Mandate. His "Obligations" Were Not Clearly Defined . . . . . . . . . . . . 26

    1.    This Court Mandated That Mr. Schwartz Has an Implied Franchise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    2.    This Court Mandates That Mr. Schwartz Has an Implied Franchise for the Duration of His Lifetime . . . . . . . . . 27

    3.    This Court Mandated That Mr. Schwartz Has an Implied Franchise for the Duration of His Lifetime that Was Royalty-Free . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    4.    This Court Also Reinstated The Jury's Verdict That Mr. Schwartz Cannot Obtain Undefined Benefits Unless He Also Agrees to Fulfill the Same Undefined Obligations . . . . . . . . . . . . . . . . . . . . . . . . . 28

        i.    This Court's "Same Obligations" Ruling Was Intended to be a Reinstatement of the Jury's Verdict. The Jury's Verdict, However, Was Ambiguous . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        ii.    This Court's Opinion Plainly States That Mr. Schwartz Does Not Have the "Same Obligations" as Other Franchisees. His Relationship With RAWA is Different . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

B.    RAWA's Mandate Agreement Fails Out of Hand Because Neither the First Jury Nor This Court Considered RAWA's 2011 Franchise Agreement When Ruling on "Same Obligations" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

C.    RAWA's Overreaching Conduct on Remand Forced Judge Messitte to Make the Rulings About Which RAWA Now Complains . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    1.    RAWA's Brief Elides Over Its Overreaching

Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

2.    RAWA's Overreaching Conduct Gave Judge Messitte No
      Choice But to Protect Mr. Schwartz's
      Rights on Remand . . . . . . . . . . . . . . . . . . . . . . . 35

      i.    RAWA Selectively and Inconsistently Applies the
            Mandate Rule . . . . . . . . . . . . . . . . . . . . . . . . 36

      ii.   Judge Messitte's Ruling Implemented Both the
            Letter and Spirit of this Court's Mandate by Trying
            RAWA's Counter-claims to the Jury . . . . . . . . 37

D.    Judge Messitte's Rulings Squarely Fall Under Two Exceptions to
      the Mandate Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

      1.    RAWA Submitted Significant New Evidence (*i.e.*, the 2011
            Franchise Agreement) Only After This Court's March 9,
            2012 Decision . . . . . . . . . . . . . . . . . . . . . . . . . . 38

      2.    Mr. Schwartz Will Suffer a Serious Injustice if RAWA is
            Allowed to Place Him Under the Yoke of the 2011
            Franchise Agreement . . . . . . . . . . . . . . . . . . . . . 38

E.    This Court Already Considered and Rejected RAWA's Mandate
      Argument. This Court Should Stay True to Its
      Earlier Ruling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

II.   The District Court Prevented RAWA From Rewriting History and Its
      Contract With Mr. Schwartz . . . . . . . . . . . . . . . . . . . . . . . 41

      A.    RAWA Does Not Conspicuously Cite Any Standard of Review.
            The Correct Standard of Review is Clearly Erroneous . . . . . 41

      B.    RAWA, Rather Than Either Judge Messitte or Mr. Schwartz,
            Sought to Rewrite Mr. Schwartz's Franchise Rights . . . . . . . 41

III.  The District Court Correctly Assigned RAWA the Burden to Prove its
      Anti-Trust Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

A.    A Litany of Case Law Holds that RAWA, as the Anti-trust
      Plaintiff, Has the Burden to Prove Its Claim . . . . . . . . . . . . . 47

B.    RAWA's Two Cases and Supposition are Unavailing  . . . . . 49

IV.   The District Court Did Not Prevent RAWA From Presenting
      Admissible, Relevant Evidence to the Jury that Mr. Schwartz's
      Exclusive Territory Foreclosed Competition in a Substantial Share of the
      Los Angeles Rental Car Market. RAWA Could Not Present its Case
      Because it Had No Case to Present  . . . . . . . . . . . . . . . . . . . . . . . . . 51

A.    RAWA Has Cited the Incorrect Standard of Review. The Correct
      Standard of Review is Abuse of Discretion . . . . . . . . . . . . . . 51

B.    The District Court Repeatedly Encouraged RAWA to Present a
      Case to the Jury Which Comported With this Court's Mandate,
      RAWA's Pleadings and Principles of Common Sense. RAWA
      Simply Refused . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

      1.    RAWA Tried to Put a Case Before the Jury that Was
            Radically Different From this Court's
            Instructed Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . 58

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

DISCLOSURE OF CORPORATE AFFILIATIONS . . . . . . . . . . . . . . . . . . . . 61

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

## TABLE OF AUTHORITIES

CASES                                                    PAGE(S)

*Allfirst Bank v. Progress Rail Servs. Corp.*,
    521 Fed. App'x 122 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Bert G. Gianelli Distrib. Co. v. Beck & Co.*,
    219 Cal. Rptr. 203 (Cal. Ct. App. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Bryte ex rel. Bryte v. Am. Household, Inc.*,
    429 F.3d 469 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Casey v. Planned Parenthood of Southeastern, Pennsylvania*,
    14 F.3d 848 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 35

*Cochran v. M & M Transp. Co.*,
    110 F.2d 519 (1st Cir. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Comedy Club, Inc. v. Improv West Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 47

*Dayton Time Lock Serv., Inc. v. Silent Watchman Corp.*,
    124 Cal. Rptr. 678 (Cal. Ct. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . 44, 49

*Doe v. Chao*,
    511 F.3d 461 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Donald B. Rice Tire Co., Inc. v. Michelin Tire Corp.*,
    483 F. Supp. 750 (D. Md. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Exxon Corp. v. Superior Ct.*,
    60 Cal. Rptr. 2d 195 (Cal. Ct. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . 47

*Fisherman's Wharf Bay Cruise Corp. v. Superior Ct.*,
    7 Cal. Rptr. 3d 628 (Cal. Ct. App. 2003) . . . . . . . . . . . . . . . . . . . . . . 48, 50

i

*Invention Submission Corp. v. Dudas*,
　　413 F.3d 411 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32, 38

*Lifestyle Improvement Ctrs., LLC v. East Bay Health, LLC*,
　　No. 2:13-cv-735, 2013 U.S. Dist. LEXIS 144685
　　(S.D. Ohio Oct. 7, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Roth v. Rhodes*,
　　30 Cal. Rptr. 2d 706 (Cal. Ct. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . 48

*Schwartz v. Rent-A-Wreck of Am., Inc.*,
　　468 Fed. App'x. 238 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Scott v. Snelling, Inc.*,
　　732 F. Supp. 1034 (N.D. Cal. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Sprague v. Ticonic Nat'l Bank*,
　　307 U.S. 161 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
　　546 F.3d 991 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 49

*United States v. Arnold, Schwinn & Co.*,
　　388 U.S. 365 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Bell*,
　　5 F.3d 64 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32, 38

*United States v. Bell*,
　　988 F.2d 247 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

*United States v. Gravely*,
　　840 F.2d 1156 (4th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Microsoft Corp.*,
　　253 F.3d 34 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Moore*,
  27 F.3d 969 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*United States v. Whittington*,
  26 F.3d 456 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Wall v. Wade*,
  741 F.3d 492 (4th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 53


STATUTES                                                              PAGE(S)

CAL. BUS. & PROF. CODE § 16600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 47, 50

CAL. BUS. & PROF. CODE § 16720 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50


RULES                                                                PAGE(S)

FED. R. APP. P. 28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FED. R. EVID. 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

## JURISDICTIONAL STATEMENT

Pursuant to Federal Rule of Appellant Procedure 28(b), Appellees David S. Schwartz ("Schwartz") and Rent-A-Wreck, Inc. ("RAWI") (collectively referred to as "Mr. Schwartz") adopt the jurisdictional statement of Appellants Rent-A-Wreck of America, Inc. ("RAWA") and Bundy American, LLC ("Bundy") (collectively, "RAWA").

## STATEMENT OF THE ISSUES

Mr. Schwartz disagrees with RAWA's characterization of this Court's holding in the preceding matter, *Schwartz v. Rent-A-Wreck of Am., Inc.*, 468 Fed. App'x. 238 (4th Cir. 2012). Rather than RAWA's efforts to spin the Court's prior holding, Mr. Schwartz contends the Court's own language from its preceding *Schwartz* opinion, most accurately states the issues pertinent here.

This Court stated as follows:

> With respect to the Rule 50(b) challenges, we affirm the district court's judgment that there existed an implied contract based on a course of dealing between the parties with respect to Schwartz and RAWI's operation of a used car rental business in West Los Angeles; that Schwartz and RAWI are not required to pay royalties or fees to RAWA or Bundy; and that the parties' rights under the contract shall last for the duration of Schwartz's life. We vacate the district court's denial of RAWA and Bundy's Rule 50(b) motion seeking judgment as a matter of law that the grant of an exclusive franchise within Los Angeles to Schwartz

1

> and RAWI is void *ab initio* under California law. We hold
> that the question of whether an exclusive territorial
> provision forecloses competition in a substantial share of
> the market of the affected line of commerce - which, if
> answered in the affirmative, would void the exclusivity
> provision under California law - is a **factual** question;
> therefore, remand is required to permit a factfinder to make
> that factual finding. . . . We further reverse the district
> court's judgment that RAWI and Schwartz are entitled to
> the benefits of other RAWA franchisees but do not have
> the same obligations as those franchisees. Instead, we
> reinstate the jury's verdict that Schwartz and RAWI cannot
> obtain such benefits unless they agree to fulfill the same
> obligations as other RAWA franchisees.

*Schwartz*, 468 Fed. App'x. at 255-56 (emphasis supplied).

Mr. Schwartz would re-frame the four issues that RAWA has stated on appeal as follows:

1.    Did the district court carry out the letter and spirit of this Court's opinion on remand?

2.    Did the district court impermissibly re-write the implied in fact contract between the parties?

3.    Did the district court err in assigning RAWA the burden to prove its counter-claim?

4.    Did the district court err in precluding RAWA from presenting evidence as to the relevant line of commerce, which differed from the line of commerce

2

mandated by this Court, and from the alleged line of commerce pled in RAWA's counter-claim?

Mr. Schwartz submits that each of these questions should be answered in the negative.

## STATEMENT OF THE CASE

RAWA has brought a second appeal to this Court after yet another loss before a jury. In order to resolve RAWA's most-recent appeal, it is necessary to understand the protracted history of the business that Mr. Schwartz founded, a business which RAWA continues unabashedly to attempt to wrest from him despite the prior rulings of this Court, and the judge and jury below. Accordingly, Mr. Schwartz will begin by summarizing the five decades of history, relationships and course of dealings between the parties that was adduced in the first jury trial and that was ultimately adopted by this Court.[1] Following that, Mr. Schwartz will present the facts and the procedural history which are relevant to those issues submitted for review.

---

[1] This Statement of the Case will cite to this Court's *Schwartz* decision for many of the pre-remand facts, which were adopted by this Court. Citations to relevant, post-remand facts and procedural history and rulings will be made to the parties' Joint Appendix ("J.A.").

3

I.    **The History, Relationship and Course of Dealings Between the Parties Leading Up to the First Jury Trial in April 2010.**

In 1973, Mr. Schwartz created and began using the name Rent-A-Wreck in connection with his rental car business in Los Angeles, California. *Schwartz*, 468 Fed. App'x. at 241. In 1975, Schwartz incorporated under the name Rent-A-Wreck, Inc. *Id.* at 241. On May 13, 1977, Schwartz formed another new company with an investor named Geoffrey Nathanson. *Id.* The name of the new company, owned equally between Schwartz and Nathanson, was Bundy American Corporation ("Bundy"). *Id.* Bundy was formed for the purpose of offering Rent-A-Wreck brand auto rental franchises. *Id.*

In March 1977, shortly before Schwartz and Mr. Nathanson formed Bundy, they entered into an agreement that provided that all of Schwartz's and RAWI's interests in the Rent-A-Wreck name and marks would be assigned to Bundy; that Schwartz would operate an exclusive territory in all of Los Angeles County, and that the geographical area for his use of the mark was excepted from this assignment; and that the agreement would be binding upon both parties and their respective heirs, executors, administrators, and permitted assigns (the "1977 Agreement"). *Id.*

In 1985, Schwartz and Nathanson decided to take Bundy public under the name Rent-A-Wreck of America, Inc. ("RAWA"). *Id.* For this purpose, Mr. Schwartz and

4

RAWA entered into an agreement (the "1985 Agreement"), by which Schwartz agreed, "I shall not engage in any activities that compete with the business of [RAWA], except activities in the protected territory described below, including the running of my Bundy Rent-A-Wreck operation in West Los Angeles." *Id.* The 1985 Agreement further mapped out a territory – located within Los Angeles – within which Schwartz could continue operating a single car rental location (called Bundy Rent-A-Wreck). *Id.* RAWA agreed that it would grant no franchises, nor open any RAWA-owned or affiliated operations, in Schwartz's protected territory. *Id.* By its own terms, the 1985 Agreement terminated on June 30, 1985, except that the exclusivity provision would continue in full force and effect after that date. *Id.*

On August 12, 1985, RAWA's offering prospectus was issued (the "Prospectus"). It stated, in relevant part, that "[i]n connection with the formation of Bundy, Schwartz assigned all of his right, title and interest in and to the trade name and trademark 'Rent-A-Wreck' to Bundy, retaining the right to the concurrent use of the trade name and trademark at the original Rent-A-Wreck facility owned by him in West Los Angeles." *Id.*

Notably, in connection with RAWA's 1985 public stock offering, Mr. Schwartz "gave back" to RAWA a substantial portion of his Los Angeles County territory reserved for him in the 1977 Agreement. Thereafter, Mr. Schwartz retained a smaller

5

portion of his exclusive West Los Angeles territory that is at issue, here. *See* J.A. 1202.

For three years from September 1987 to September 1990, RAWA leased from Mr. Schwartz his car rental business, his rental fleet and his territory (the "1987 Lease Agreement"). *Schwartz*, 468 Fed. App'x. at 242. At the end of the lease period, Mr. Schwartz resumed operating his rental car business, with his same cars, at his same location, and in the same territory. *Id.*

For the next 17 years, extending throughout the 1990s and 2000s, Mr. Schwartz continued operating his rental car business. When RAWA established an internet advertising page in the mid-1990s, RAWA included the contact information for Mr. Schwartz's Los Angeles Rent-A-Wreck on the national franchise website. *Id.*

That changed in June 2007, when RAWA removed Mr. Schwartz's business listing from its national franchise website. RAWA told Schwartz that if he wanted to get back on RAWA's website, he would have to sue RAWA. *See* J.A. 1203. Shortly thereafter, Mr. Schwartz sued RAWA in the United States District Court for the District of Maryland. *Schwartz*, 468 Fed. App'x. at 242-43.

RAWA filed various counter-claims that, save for one, were decided against it. RAWA's sole remaining counter-claim requests a declaration that Mr. Schwartz's exclusive franchise is an unlawful restraint on trade under California Business and

6

Professions Code § 16600. *Id.* at 243.

## II.   The First Jury Trial in April 2010.

At the end of the first trial, the jury made the following findings (which this

Court later affirmed):

- Mr. Schwartz, based on a course of dealing, has an express or implied contract with RAWA with respect to his operation of a used car rental business in West Los Angeles.

- Mr. Schwartz's express or implied contract is a franchise with RAWA.

- Mr. Schwartz has the foregoing rights for the rest of his natural life.

*Id.* at 244.

Upon consideration of post-trial motions, the district court affirmed the

jury's verdict in part, butoverturned in part.  Specifically, the district court held:

- Mr. Schwartz is entitled to a royalty-free franchise.

- Mr. Schwartz has an exclusive territory in West Los Angeles, California.

- Mr. Schwartz's has an exclusive, royalty-free franchise for the duration of his life.

- Mr. Schwartz is not subject to the same franchise obligations as other RAWA franchisees.

*Id.* at 245.

7

### III.    This Court's Ruling on the First Appeal.

Dissatisfied with these rulings, RAWA appealed, making a plethora of arguments to this Court ("the first appeal"). *Id.* After briefing and oral argument, this Court affirmed the foundational precepts of district court's decision, holding:

> that there exist[s] an implied contract based on a course of dealing between the parties with respect to Schwartz and RAWI's operation of a used car rental business in West Los Angeles; that Schwartz and RAWI are not required to pay royalties or fees to RAWA or Bundy; and that the parties' rights under the contract shall last for the duration of Schwartz's life.

*Id.* at 255. Stated differently, this Court held that the course of dealing between Mr. Schwartz and RAWA created a royalty-free Rent-A-Wreck franchise terminable at Mr. Schwartz's death. This is the lens by which Mr. Schwartz's rights must be examined here.

This Court remanded to the district court the question of whether Mr. Schwartz could legally operate his rental car business in the exclusive territory in which he had operated since 1973. Importantly this Court did not suggest or imply that Mr. Schwartz's territory was void *ab initio* under California law.[2] In fact, this Court held that Mr. Schwartz's in-term exclusive dealing agreement was valid under California

---

[2] *See e.g. Schwartz*, 468 Fed. App'x. at 255 ("In the event that the exclusive territory provision is valid . . . .").

8

law, provided that: (1) his implied contract found by the jury was a franchising agreement, whereby RAWA maintained some control as was necessary to protect its trademark, trade name, and goodwill; and (2) the exclusivity arrangement did not foreclose competition in a substantial share of the affected line of commerce. *Schwartz*, 468 Fed. App'x. at 250-51. With respect to the second prong, foreclosure of competition, this Court noted that RAWA failed to present this question of fact to the jury in the first trial. *Id.* at 251. As a result, this Court remanded those two issues to the district court for a subsequent trial. *Id.* at 255.

Lastly, this Court reversed the district court's judgment that Mr. Schwartz was entitled to the benefits of other RAWA franchisees without having the same obligations as those franchisees. *Id.* at 255-56. This Court reinstated the jury's verdict on this point.[3] *Id.* at 256.

As set forth in detail below, RAWA's interpretation of, and attempts to enforce,

---

[3] Of course, this Court's broad ruling is not entirely harmonious with its other rulings. For example, other Rent-A-Wreck franchisees pay royalty fees, but this Court exempted Mr. Schwartz from the obligation to make like payments. *Schwartz*, 468 Fed. App'x. at 255. Moreover, RAWA admitted in its pleadings that Mr. Schwartz does not have the same obligations that it seeks to impose on other franchisees:

- Section 1(C): The term [of the franchise agreement] must be changed to the life of David Schwartz.
- Sections 4(A), 4(B) and 4(D) through 4(H): Inapplicable fees
- Section 11(D): No assignment fee.
- Section 13: No transfer.

*See* J.A. 436-37 (citing to Doc. No. 419, at 4).

9

this Court's "obligations and benefits" ruling throughout the period after remand touched off contentious litigation in the district court. RAWA's unwarranted efforts to push Mr. Schwartz out of business required the district court, out of necessity, to make certain rulings on remand.

### IV.    RAWA Makes Its First Attempt to Terminate Mr. Schwartz's Implied, Royalty-Free, Lifetime Franchise Rights on Remand.

On March 16, 2012 – just one week after this Court issued its original opinion – RAWA attempted to carry out its previously declared intention to terminate Mr. Schwartz just to see "how high he would jump," (J.A. 1262), by demanding that he agree to be bound to the myriad obligations set forth in the 91-page 2011 Franchise Agreement, a document that was never part of the record before this Court, or the district court. *See* J.A. 215 - 306. RAWA's counsel wrote that Mr. Schwartz must comply with the 91-page rule book despite having never introduced the rule book into evidence at the first trial, or placing it into the record before the this Court during the first appeal. RAWA interpreted this Court's decision as binding Mr. Schwartz to an agreement never considered by any court in the many years the parties have been litigating, and which only became known to Mr. Schwartz after this Court's opinion.

About one month later, on April 25, 2012, RAWA's President, James W. Cash, sent another letter to Mr. Schwartz illustrating how RAWA intended to use this

Court's opinion, and the 91-page Franchise Agreement, as leverage to terminate Mr. Schwartz's most fundamental right – to do business under the Rent-A-Wreck name. *See* J.A. 307-308. Therein, RAWA asserted that Mr. Schwartz was bound by all the obligations contained inthe 2011 Franchise Agreement. From this faulty predicate, RAWA concluded that Mr. Schwartz was in "default" of his obligations under the Franchise Agreement because of his use of the Rent-A-Wreck trade name. *Id.* RAWA then concluded that the 2011 Franchise Agreement authorized it to terminate Mr. Schwartz's right to use the Rent-A-Wreck trade name and trade mark (rights that this Court unquestionably confirmed belonged to Mr. Schwartz for the duration of his lifetime as a royalty-free Rent-A-Wreck franchisee). *Id.* For good measure, RAWA threatened to seek injunctive relief, damages, attorneys fees and costs against Mr. Schwartz if he did not comply with the terms of the 2011 Franchise Agreement. *Id.*

RAWA was hardly finished with its efforts to terminate Mr. Schwartz. By letter dated June 6, 2012, RAWA alleged that Mr. Schwartz willfully and deliberately defied this Court's mandate by failing to execute the 2011 Rent-A-Wreck Franchise Agreement. J.A. 309-10. Without basis, RAWA demanded that Mr. Schwartz take the following measures before the close of business on June 15, 2012:

    (A)    Execute the 2011 Franchise Agreement;

    (B)    Change the name of his business, Rent-A-Wreck, Inc., which has

11

operated under the same name since 1975 (before RAWA or Bundy came into existence), to a name which did not include the "Rent-A-Wreck" trade name Mr. Schwartz created;

(C)  Allow RAWA to inspect and audit (i) Mr. Schwartz's business premises; (ii) all RAWI's rental vehicles; (iii) all RAWI's financial records (including, but not limited to, profit and loss statements, federal, state and local income tax and sales tax returns); (iv) Mr. Schwartz's personal federal, state and local income tax and sales tax returns; and (v) all Mr. Schwartz's business computers (even though this Court held that Mr. Schwartz owed RAWA no royalties);

(D)  Submit to and pay for initial operations training for himself and all his employees;

(E)  Submit to and execute a "Web Rent Computer System" End User License Agreement that would "enable[] Rent-A-Wreck to access [Mr. Schwartz's] business records" (even though this Court held that Mr. Schwartz owed RAWA no royalties);

(F)  Submit signed monthly and annual reports verified by a certified public accountant that, *inter alia*, identified each vehicle rented and gross revenues derived therefrom (even though this Court held that Mr. Schwartz owed RAWA no royalties). *Id*.

12

In the event that Mr. Schwartz, RAWA's founder, failed to comply with each and every one of these invasive and never-before-required demands, RAWA threatened to "take all measures necessary to compel [Mr. Schwartz's] adherence to [his] Paragraph 15 post-termination obligations." *Id.*

On June 12, 2012, the district court rebuffed RAWA's attempt to terminate Mr. Schwartz's implied, royalty-free, Rent-A-Wreck franchise rights on remand, ordering:

> [RAWA] appear[s] to interpret the Court of Appeals opinion to allow them to impose on [Mr. Schwartz] the obligations contained in a 2011 Franchise Agreement. The Court does not necessarily agree with [RAWA's] interpretation, but, in any event, is not prepared to make a final determination at this time. Pending clarification of this and other contested issues, the *status quo ante* as set forth in this Court's prior Orders shall remain in effect.

J.A. 188.

The district court then set forth a reasonable briefing schedule to allow Mr. Schwartz and RAWA to submit their respective positions on the issues to be addressed on remand. J.A. 189.

13

## V.    RAWA Petitions for Writ of Mandamus on the Backing of the Same Arguments Presented Here. RAWA's Writ of Mandamus Fails.

Having been blocked in its attempt to run Mr. Schwartz out of business, on June 21, 2012, RAWA petitioned this Court for a writ of mandamus. J.A. 311-326. Therein, RAWA propounded the same theory that it trumpets again here – that the district court's order exceeded the scope of this Court's mandate. On July 3, 2012, this Court promptly denied RAWA's petition for writ of mandamus. J.A. 1955.

In the Summer and Fall of 2012, the district court asked the parties to brief various issues related to the remand trial. *See, e.g.*, J.A. 190-498. During an October 4, 2012 hearing, the district court and the parties discussed the outstanding issues on remand. In that hearing, the district court admonished RAWA's behavior to that date:

> Let me give you another point, Mr. Janssen, to be very clear. There is a feeling, and I gave you credit for this. I've said this basically in your favor, but I'm going to keep a watchful eye. This has been hard ball that you folks have been playing all along here, but I'm going to be sure that you're not demanding too much of [Mr. Schwartz] in an effort to squeeze [him], because squeeze has been the name of the game from your client's standpoint from the beginning. I want this to be a fair solution, and, right now, as I read your papers, it looks like you're trying to introduce a whole bunch of things that frankly [are] settled, and, with regard to any trademark violation claim, can't use the mark, whatever he's been doing relative to your mark when your counterclaim for trademark infringement was rejected, he gets to keep doing.

J.A. 448-49.

14

After the October 4, 2012 hearing, the district court requested additional briefing on, most notably, the parties' respective positions regarding Mr. Schwartz's rights, entitlements and obligations under his franchise as defined by this Court. J.A. 499.

On January 23, 2013, the district court ruled on Mr. Schwartz's franchise rights, entitlements and obligations after receiving filings from the parties. J.A. 499-507. The district court ordered that Mr. Schwartz was subject to the terms of the 2011 Franchise Agreement with certain exceptions related to fees and assignments together with any term that changed the duration of his lifetime franchise. J.A. 503. Then, in conformance with this Court's mandate, the district court presciently warned RAWA not to use the 2011 Franchise Agreement as a sledge to drive Mr. Schwartz out of business, by ruling:

> On the other hand, if Rent-A-Wreck attempts, in any way, to use the Franchise Agreement as pretext to unduly pressure Schwartz in his normal business operations, or instead to try to drive him out of business, Schwartz will undoubtedly have new claims to assert against Rent-A-Wreck that this Court can and will recognize. Moreover, if this Court finds that Rent-A-Wreck acted in bad faith defiance of the orders of this Court and the Fourth Circuit, such conduct would warrant appropriate sanctions against Rent-A Wreck. Regardless, that issue is not for the Court to decide at this juncture.

J.A. 504.

15

Moreover, the district court held that Mr. Schwartz was not obligated to sign the 2011 Franchise Agreement, as this Court affirmed the district court's judgment "'that there existed an *implied* contact based on a course of dealing between the parties.' At no point did the Fourth Circuit ever suggest that an express contract came into being." J.A. 506 (quoting *Schwartz*, 468 Fed. App'x. at 255 (emphasis supplied by district court)).

### VI. RAWA Makes Its Second Attempt to Terminate Mr. Schwartz's Implied, Royalty-Free, Lifetime Franchise Rights on Remand. The District Court Rebuffs RAWA's Attempts to Use the 2011 Franchise Agreement as a Lever to Terminate Mr. Schwartz's Rights.

This district court's warnings to RAWA – to refrain from doing violence to Mr. Schwartz's right to enjoy a royalty-free Rent-A-Wreck franchise for the rest of his life – fell on deaf ears. Just days later, RAWA embarked down the exact path that the district court warned it not to travel. *See* J.A. 525.

By letter dated February 4, 2013, RAWA again sought to use the terms of the 2011 Franchisee Agreement to unduly pressure Schwartz in his normal business operations, to try to drive him out of business, or in Mr. Fitzgerald's words, "to take everything that [Mr. Schwartz] own[s]," J.A. 1207, or to see "how high he jumps." J.A. 1262.

By that letter, and on the backing of the 2011 Franchise Agreement, RAWA demanded that Mr. Schwartz do the impossible – that he increase his rental car fleet

16

by a factor of 12 – or face termination. *See* J.A. 526. Specifically, RAWA demanded that Schwartz maintain a fleet size of 1,726 vehicles at his West Los Angeles location. By comparison, Mr. Schwartz historically maintained a fleet of approximately 150 rental cars. *See, e.g.*, J.A. 1080. Nevertheless, RAWA demanded that Mr. Schwartz, *inter alia*, purchase 1,600 additional rental cars and add them to his rental operation within 30 days, or else face termination. J.A. 525-26.[4]

With its February 2013 letter, RAWA gave full credence to, and tried to extract the maximum benefit from, the district court's January 23, 2013 Memorandum Opinion and Order, demanding Mr. Schwartz increase his fleet size by 12 times within a mere 30 days. RAWA even went so far as to instruct Mr. Schwartz, "the [district court's January 23, 2013] Order is self-executing, and Mr. Schwartz's obligation to comply indisputably began on January 23, 2013." J.A. 525.[5]

---

[4] RAWA's Fleet Requirements were not, in fact, fully described in its 2011 Franchise Agreement, but instead, were described in a so-called "Operating Manual." In typical surprise fashion, RAWA's purported "Operating Manual" was not attached to the 2011 Franchise Agreement presented to Mr. Schwartz after this Court's ruling, and like the Franchise Agreement, the "Operating Manual" has never been provided to this Court, has never been contemplated by this Court, and is not before this Court now. Instead, and as before, RAWA is now seeking to enforce *post hoc* terms on Mr. Schwartz in surprise fashion.

[5] RAWA's Brief takes considerable pains to argue that the district court's January 23, 2013 order violated the mandate rule, even though RAWA previously attempted to seize on the full benefits of this "self-executing" order. *Id.* RAWA's position before this Court is entirely inconsistent than the position it took before the district court.

17

Mr. Schwartz moved the district court to alter, amend and/or stay its January

23, 2013 order to escape the termination of his royalty-free, lifetime franchise rights.

*See* J.A. 509 - 540.

By order dated February 28, 2013 (entered on March 1, 2013), the district court

deferred on Mr. Schwartz's motion to alter or amend, but again warned RAWA to

stop overreaching:

> However, the Franchise Agreement this Court and the
> Fourth Circuit[6] reviewed contained no explicit language
> regarding fleet size. Nor did this Court (nor presumably the
> Fourth Circuit) anticipate that Rent-A-Wreck would look
> to an Operations Manual (which was never provided to the
> Court) to determine a fleet size  requirement that turns out
> to be over ten times the size of the fleet Schwartz, et al.
> have consistently maintained throughout this litigation.
>
> Throughout the litigation and especially since this case has
> been on remand, the Court has explicitly cautioned
> Rent-A-Wreck against attempts to deprive Schwartz, et al.
> of the benefit of their judgment – that they are entitled to
> maintain royalty-free a Rent-A-Wreck franchise in a
> prescribed area of Los Angeles. The Court was and
> continues to be concerned that Rent-A-Wreck might "use
> the Franchise Agreement as a pretext to unduly pressure
> Schwartz, et al in their normal business operations, or ... try
> to drive [them] out of business." In addition, the Court has
> noted that, if it found "that Rent-A-Wreck acted in bad
> faith [in] defiance of the orders of this Court and the Fourth

---

[6] Mr. Schwartz presumes that the district court's reference to the  "Franchise Agreement"
is the 1985 Agreement signed by Mr. Schwartz, and later ratified by the RAWA Board of
Directors since the 2011 Franchise Agreement was not part of the record in the prior appeal and,
accordingly, was never previously before this Court.

Circuit, such conduct would warrant appropriate sanctions against Rent-A-Wreck." Regrettably, the Court finds it necessary to reiterate this warning.

J.A. 556-57.

On March 25, 2013, RAWA moved to alter or amend the district court's February 28, 2013 order, and to reinstate the district court's decision and order of January 23, 2013. *See* J.A. 52 (Doc. No. 438). On appeal to this Court, RAWA has reversed its position, arguing that the district court was **not** empowered to make its January 23, 2013 rulings.[7] Of course, RAWA's current argument before this Court – that the district court's January 23, 2013 order violates the mandate rule – is wholly inconsistent with its earlier plea to the district court to reinstate that same order.

In March 2013, RAWA filed a one count amended counter-claim seeking a declaratory judgment that Mr. Schwartz's exclusive territory was an unlawful restraint of trade under California law. *See* J.A. 558- 563. RAWA's amended counter-claim alleged that the relevant market or line of commerce was the renting and leasing of used motor vehicles. *See* J.A. 559, ¶5; 560, ¶9.

By Order dated May 17, 2013, the district court made a number of rulings in order to guide the upcoming June 2013 trial. Namely, the district court held: (i) as the

---

[7] *See, e.g.,* RAWA Brief, at 21 ("**Despite having no authority to do so,** on January 23, 2013, the district court ruled that 'Schwartz's obligations are largely embedded in the Rent-A-Wreck Franchise Agreement . . . .")(emphasis supplied).

19

"Fourth Circuit has stated" the jury would exclusively determine "whether the exclusive territory provision forecloses competition in a substantial share of the market for rental cars;" (ii) that Mr. Schwartz was not subject to "terms never previously considered by this Court, the prior jury, or the Fourth Circuit, particularly those which would effectively jeopardize [Mr. Schwartz's] continued existence as a royalty-free franchisee;" and (iii) that the relevant market or line of commerce at issue on remand was "rental cars" because (a) the Fourth Circuit defined the relevant market as "rental cars," and (b) were the market to be defined as "the sale of Rent A Wreck brand franchisees," as RAWA suggested, Mr. Schwartz would "lose automatically." J.A. 785-87.

By Order dated May 24, 2013, the district court, through a well-reasoned opinion that was supported by case law, assigned RAWA the burden of proving its anti-trust counter-claim. *See* J.A. 815.

By letter to the district court dated May 31, 2013, RAWA accused the court of not allowing RAWA to "litigate the case on [its] theory" that "the proper line of commerce is the granting of RAWA franchises." J.A. 819. A few days later, by order dated June 4, 2013, the district court encouraged RAWA to present a viable case to the jury by cautioning:

Please understand: The Court has only ruled that [RAWA] may not argue that [Mr. Schwartz's] exclusive franchise forecloses competition in that it prevents other Rent-A-Wreck-of-America, Inc. ("RAWA") franchises from competing in that territory. As previously stated, in the Court's view the very definition of an exclusive franchise-which the Fourth Circuit held [Mr. Schwartz] have-is that it prevents others of the same franchise from being in the exclusive franchisee's territory. **However, [RAWA is] free to argue that [Mr. Schwartz] forecloses competition by other than RAWA franchisees in an appropriate market for rental cars in whatever way they so choose, defining that market as rental cars, rental cars older than 8 years old, etc.**

JA 823 (emphasis supplied).

## VII.  The Second Jury Trial in June 2013.

As instructed by this Court in its initial opinion, over the course of a three-day trial on remand the jury heard evidence on whether (1) Mr. Schwartz's implied contract with RAWA allowed it to maintain some control over Mr. Schwartz as was necessary to protect its trademark, trade name, and goodwill; and (2) Mr. Schwartz's exclusive territory foreclosed competition in a substantial share of the affected line of commerce.  Even though RAWA was free to make its record, it conceded the second issue and and put on no evidence whatsoever on the question of whether Mr. Schwartz's exclusive territory foreclosed competition in a substantial share of the market.

21

The jury returned a unanimous verdict in favor of Mr. Schwartz, holding that

RAWA was able to exercise control over Mr. Schwartz as necessary to protect its

trademark, trade name, and goodwill, and that Mr. Schwartz's exclusive territory did

not foreclose competition in a substantial share of the affected line of commerce. J.A.

902.

The jury's unanimous verdict in Mr. Schwartz's favor was no doubt influenced

by:

- RAWA's corporate designee's admission that RAWA had to make "allowances" for certain long-standing behaviors of many of its franchisees on a "legacy basis" (J.A. 1104);

- RAWA's corporate designee's admission that RAWA's enforcement of its trademark rights "doesn't come up that much" (J.A. 1156);

- RAWA's corporate designee's admission that he hadn't visited any other RAWA franchisees (besides Mr. Schwartz's operation) in the last two years to inspect their compliance with RAWA's standards (J.A. 1139-1140); and

- the fact that Mr. Schwartz's rental car operation represents the "Rent-A-Wreck" brand more favorably than the four run-down Rent-A-Wreck franchises located in the greater Los Angeles area. *See* J.A. 1735-40; 1809-15; 1852-59; 1894-1904 (photographs of other California Rent-A-Wrecks).

But the devastating reality that RAWA could not overcome in its case was that

many franchises operating under formal, written agreements (like the bulky, single-

spaced 2011 Franchise Agreement RAWA sought to impose upon Mr. Schwartz)

22

engaged in each and all of the same practices RAWA complained so bitterly about in Mr. Schwartz's area of operation. In short, his business was neither unique nor less controlled than any other RAWA franchise as found by the jury.

Although RAWA filed a timely appeal, J.A. 925, its appeal does not challenge the sufficiency of the jury's verdict. Instead, RAWA attacks Judge Messitte's rulings during the remand of this case.

## SUMMARY OF THE ARGUMENT

RAWA's four (4) complaints against Judge Messitte's rulings all fail.

First, Judge Messitte's rulings did violate this Court's opinion, and therefore the mandate rule, but rather, his rulings sought to preserve the franchise rights that the first jury and this Court granted to Mr. Schwartz. Indeed, RAWA fails to acknowledge that its conduct on remand (namely, employing the never-before-seen 2011 Franchise Agreement in a thinly veiled attempt to force Mr. Schwartz out of the car rental business) forced Judge Messitte to enforce this Court's grant of rights to Mr. Schwartz, and to stop RAWA from terminating Mr. Schwartz's rights under the auspices of enforcing the 2011 Franchise Agreement, a document that was never before the first jury or this Court, which was not part of this Court's mandate, and which, by its plain terms, is not applicable to Mr. Schwartz.

23

Second, RAWA, and not either Judge Messitte or Mr. Schwartz, sought to rewrite the history of the parties' relationship by terminating Mr. Schwartz's rights. This Court found that the parties' course of dealing was the touchstone for defining the parties' relationship, and that, while no express contract governed the parties' relationship, a long pattern of prior conduct did define it. Instead of focusing on the parties' course of dealing, RAWA sought to impose on Mr. Schwartz the terms of its favored, but never before seen nor bargained for 2011 Franchise Agreement as a means to end his franchise rights. It is plain from the parties' relationship, and the face of RAWA's favored document, that Mr. Schwartz cannot be held to the obligations therein. Judge Messitte's rulings were correct.

Third, Judge Messitte correctly assigned RAWA the burden of proving its anti-trust counter-claim. Mr. Schwartz cites authority from the United States Supreme Court, federal appellate courts, federal district courts and California state courts in support of this proposition. In contrast, RAWA supported its untenable argument by citing to inapposite authority that Judge Messitte readily distinguished. The overwhelming authority dictates that RAWA had the burden to prove its claim.

Fourth, with respect to the validity of Mr. Schwartz's exclusive territory, Judge Messitte correctly precluded RAWA from arguing to the remand jury that the "market" or "line of commerce" relevant here was "the sale of Rent-A-Wreck

24

franchises," because (1) this Court previously identified the applicable market as
"rental cars," not the sale of Rent-A-Wreck franchises; (2) RAWA pled that the
applicable market was "rental cars;" and (3) accepting RAWA's new market
definition would have ensured it a victory, and thus, would have rendered moot this
Court's remand on that issue. Judge Messitte's rulings, and the related
correspondence, make clear that he encouraged RAWA to present a viable case.
RAWA lost before the jury because it had no viable case to present. Mr. Schwartz's
one rental car shop of 150 cars cannot foreclose competition in the bustling Los
Angeles rental car market.

## ARGUMENT

I.      **Judge Messitte's Rulings Did Not Violate the Mandate Rule Because His
        Rulings Carried Out the Letter and Spirit of this Court's Opinion.**

        Mr. Schwartz agrees that with RAWA that this Court reviews *de novo* whether
or not Judge Messitte's post-mandate rulings contravene the mandate rule.

        The crux of RAWA's argument is that Judge Messitte's rulings violated this
Court's mandate, and thus, the time-honored mandate rule because those rulings
absolved Mr. Schwartz from fulfilling the "same obligations" that other franchisees
purportedly fulfill. RAWA argues that Judge Messitte's rulings strayed beyond this
Court's mandate because the district court held that RAWA could not institute

obligations that would drive Mr. Schwartz out of business by holding Mr. Schwartz

to the terms of the 2011 Franchise Agreement. RAWA characterizes Judge Messitte's

rulings as "entirely prejudicial and unfair to RAWA," and "completely one-sided" in

favor of Mr. Schwartz. J.A. 21; 27·

### A. Mr. Schwartz's Rights Were Clearly Defined Under the Mandate. His "Obligations" Were Not Clearly Defined.

#### 1. This Court Mandated That Mr. Schwartz Has an Implied Franchise.

Both the first jury and this Court found that Mr. Schwartz had an implied Rent-

A-Wreck franchise based on a long course of dealing. *See, e.g.*, *Schwartz*, 468 Fed.

App'x. at 248, n. 9 (holding "that the last act required to make the contract, based on

a course of dealing, binding occurred prior to 1993."); *id*. at 248 (concluding "that

there was sufficient evidence for a reasonable jury to have found in [Mr. Schwartz's]

favor as to the existence of an implied contract"); *id.* (holding "that the terms of the

implied contract found by the jury are not at variance with the terms of any

preexisting contract between the parties."); *id.* at 249 ("the jury found an implied

contract"); *id.* at 251 ("we believe California law applies to the implied contract

found by the jury."); *id.* at 253 ("Moreover, the jury's verdict was based on the course

of dealings between the parties."); *id.* at 255 ("affirming the district court's judgment

that there existed an implied contract based on a course of dealing between the parties

26

with respect to Schwartz and RAWI's operation of a used car rental business in West Los Angeles").

It is equally clear that the Court did not hold that Mr. Schwartz was subject to an express contract or obligated to execute an express contract. *Id.* at 242 (noting that "there has never been a formal franchise agreement executed between RAWA and Schwartz.").

## 2. This Court Mandated That Mr. Schwartz Has an Implied Franchise for the Duration of His Lifetime.

Both the first jury and this Court found that Mr. Schwartz had an implied Rent-A-Wreck franchise for his lifetime. *See id.* at n. 10 ("There was sufficient evidence for the jury to conclude that the course of the dealings between the parties created an implied contract that gave Schwartz rights for the duration of his lifetime, rather than an indefinite duration"); *id.* at 255 ("the parties' rights under the contract shall last for the duration of Schwartz's life").

## 3. This Court Mandated That Mr. Schwartz Has an Implied Franchise for the Duration of His Lifetime that Was Royalty-Free.

Moreover, this Court found that Mr. Schwartz's implied, lifetime franchise was also royalty-free. *See id.* at 252 ("we conclude that a reasonable jury could not have interpreted the course of dealing between the parties to require payment of fees or

27

royalties."); *id.* at 255 ("Schwartz and RAWI are not required to pay royalties or fees to RAWA or Bundy").

>        **4.    This Court Also Reinstated The Jury's Verdict That Mr. Schwartz Cannot Obtain Undefined Benefits Unless He Also Agrees to Fulfill the Same Undefined Obligations.**

The parties and Judge Messitte spent considerable time parsing through the "same obligations" portion of this Court's opinion in order to determine the obligations imposed upon Mr. Schwartz in exchange for his exclusive, royalty-free, West Los Angeles franchise.

>        **i.    This Court's "Same Obligations" Ruling Was Intended to be a Reinstatement of the Jury's Verdict. The Jury's Verdict, However, Was Ambiguous.**

In Special Interrogatory No. 3, the jury responded to the question, "Whether or not as a franchisee, the right of [Mr. Schwartz] to use trade name and trademark Rent-A-Wreck, and receive [the] same benefits as franchisees without the obligations." *Schwartz*, 468 Fed. App'x. at 244. The jury answered that query, "No." Thus, the jury intended for Mr. Schwartz to have some obligations to RAWA. The jury manifested Mr. Schwartz's obligations to RAWA in the very next Special Interrogatory, in the form of fees. *See id.*

However, the Mr. Schwartz's obligation to pay fees or royalties to RAWA – the sole obligation expressly found by the jury – was not supported by the evidence

adduced at trial. Accordingly, the jury's decision was reversed by Judge Messitte, and that reversal was affirmed by this Court. *Id.* at 255.

### ii. This Court's Opinion Plainly States That Mr. Schwartz Does Not Have the "Same Obligations" as Other Franchisees. His Relationship With RAWA is Different.

From the fact that Mr. Schwartz was granted a royalty-free franchise whose term extended for the duration of his life, it is plain that this Court did not mandate that Mr. Schwartz, literally, had the same obligations as every other franchise. Such a reading of the Court's opinion would create irreconcilable inconsistencies, which would turn both the Court's ruling and simple logic on its head.

For example, this Court found that Mr. Schwartz was not obligated to pay royalties or fees to RAWA. According to RAWA's 2011 Franchise Agreement, however, other franchisees pay fees. J.A. 220-222 (Section 4, Fees). In another example, this Court found that Mr. Schwartz's franchise is for the duration of his lifetime. The 2011 Franchise Agreement, however, "has no expiration date. It remains in effect until terminated by [the franchisee] or [RAWA] according to its provisions." J.A. 219 (Section 1.C, Term). The second jury found that Mr. Schwartz has an exclusive territory. J.A. 902. The 2011 Franchise Agreement, however, provides that a franchisee will have an exclusive "Primary Service Area" as long as the franchisee complies with the 2011 Franchise Agreement. J.A. 219 (Section 1.B.2).

29

This Court's mandate giving Mr. Schwartz a royalty-free, lifetime, implied right to operate a Rent-A-Wreck franchise is difficult to reconcile with the Court's decision that Mr. Schwartz must fulfill the "the same obligations" to realize the same benefits as other Rent A Wreck franchises, except by looking at the real world state of affairs in the RAWA network. Although Mr. Schwartz's relationship with RAWA was "somewhat unorthodox," *Schwartz*, 468 Fed. App'x. at 242, his business, upon examination, proved to be as protective of the RAWA mark as any other franchisee's operation. Indeed, as recently as April 23, 2012 (just a month after this Court issued its opinion), RAWA touted Mr. Schwartz as "a customer service God" on its Facebook and Twitter pages. J.A. 1175. Mr. Schwartz's goodwill actually enriched RAWA's brand.

Moreover, it is critical to note that Mr. Schwartz is not a run-of-the-mill franchisee; he is RAWA's founder and the creator of the concept of renting "wrecks."

Judge Messitte's rulings recognized these difficulties, and refused to allow RAWA to seek to exploit them in order to terminate Mr. Schwartz's mandated rights. For example, by order dated January 23, 2013 (an order upon which RAWA initially seized, but now decries), Judge Messitte noted that this Court held that Mr. Schwartz is not subject to all the obligations of other franchisees, *e.g.*, fees and duration of agreement. J.A. 502.

30

Mr. Schwartz posits that this Court's initial "same obligations" finding was

guided by its concern that Mr. Schwartz's exclusive territory would be void *ab initio*

under California law if RAWA could not implement certain measures of control on

Mr. Schwartz necessary to protect RAWA's trademark, trade name and goodwill. *See*

*Schwartz*, 468 Fed. App'x. at 252, n. 14. This Court's "control" concerns should be

allayed because the remand jury found, looking at a wide pattern of conduct by

RAWA in governing the business operations of its other franchisees, that RAWA's

control over Mr. Schwartz was sufficient to protect its trademark and image. The jury

found that Mr. Schwartz's business was no worse in actual operation than most of its

other franchises who were purportedly under the terms of the written Franchise

Agreement. RAWA does not challenge the propriety of the jury's verdict.

### B.    RAWA's Mandate Argument Fails Out of Hand Because Neither the First Jury Nor This Court Considered RAWA's 2011 Franchise Agreement When Ruling on "Same Obligations."

The mandate rule is only "controlling as to matters within its compass."

*Invention Submission Corp. v. Dudas*, 413 F.3d 411, 415 (4th Cir. 2005) (noting that

under the mandate rule, a lower court generally may not consider questions that the

mandate "laid to rest."); *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)(quoting

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). When a Court of Appeals

remands for further proceedings, a district court must "implement both the letter and

spirit of the . . . mandate, taking into account [the Court of Appeals'] opinion and the circumstances it embraces." *Bell*, 5 F.3d at 66.

RAWA's mandate argument fails in the first instance because neither the first jury, nor this Court, considered RAWA's 2011 Franchise Agreement. It was simply not part of the record in the district court, or before this Court on appeal. It is axiomatic, then, that when this Court broadly held that Mr. Schwartz must submit to the same obligations as other RAWA franchisees, it could not have meant that he was obligated to fulfill the terms of the 2011 Franchise Agreement. In mandate rule parlance, then, Judge Messitte's rulings did not (and could not) violate this Court's mandate because the application of RAWA's onerous, 91-page 2011 Franchise Agreement was not "within [the] compass" of either the first jury's or this Court's decisions. *See Invention Submission Corp.*, 413 F.3d at 415.

Judge Messitte's rulings did not violate this Court's mandate because neither the first jury's nor this Court's decisions embraced the obligations set out in the 2011 Franchise Agreement, as it was not before them. *Bell*, 5 F.3d at 66. Moreover, this Court could not have mandated that Mr. Schwartz was subject to obligations contained in the 2011 Franchise Agreement because that agreement was not part of the record on appeal. *Casey v. Planned Parenthood of Southeastern, Pennsylvania*, 14 F.3d 848, 859 (3d Cir. 1994)("An appellate court always decides a case on the

32

record before it; it cannot do otherwise."). RAWA seeks to hide from this critical

point, and its brief is entirely silent on its attempt to shutter Mr. Schwartz's business,

an effort that was wholly premised on its argument that all franchisees are subject to

the "same obligations" imposed by the 2011 Franchise Agreement.[8] At the same time,

RAWA ignores that no other franchisee has been required to follow the 2011

agreement. In fact, RAWA's brief elides over all mention of the 2011 Franchise

Agreement.

RAWA's conclusion that Judge Messitte did violence to this Court's mandate

is based upon a fiction, as this Court Court never held that Mr. Schwartz must honor

all (or any) of the provisions of the 2011 Franchise Agreement. This Court not have

concluded that Mr. Schwartz was bound to honor the 2011 Franchise Agreement,

because that agreement was never before this Court. The 2011 Franchise Agreement

had no part in this litigation whatsoever until one week after this Court issued its

opinion and remanded the case for further proceedings. Nevertheless, RAWA remains

steadfast and insists that Mr. Schwartz must be held to the vast majority of the

provisions in an agreement that neither Mr. Schwartz, nor any court, had seen as of

the time the key decisions in this case issued.

---

[8] As noted *infra*, not all RAWA franchisees are subject to the 2011 Franchise Agreement.

**C.     RAWA's Overreaching Conduct on Remand Forced Judge Messitte to Make the Rulings About Which RAWA Now Complains.**

**1.     RAWA's Brief Elides Over Its Overreaching Conduct.**

RAWA uses vivid color to attempt to paint Judge Messitte as having overstepped his bounds, but it applies no such gloss to its own gross overreaching upon remand.   RAWA's brief sets forth nine (9) pages of facts, yet it does not devote one line to explaining its own post-remand efforts to drive Mr. Schwartz out of business. RAWA's brief ignores RAWA's attempts to subject Mr. Schwartz to the 2011 Franchise Agreement in an effort to shut down Mr. Schwartz's business. However, RAWA cannot ignore that its post-remand actions – and not a bias from the district court – prompted Judge Messitte to make rulings necessary to allow Mr. Schwartz to realize the benefit of the implied contract that was affirmed by this Court in the first appeal.

RAWA's brief does not disclose to this Court that there was direct evidence that its true purpose was to terminate Mr. Schwartz.   In fact, it sent four (4) termination letters to Mr. Schwartz post-remand, the last of which, on the authority of the 2011 Franchise Agreement, demanded that Mr. Schwartz add 1,600 rental cars to his fleet within 30 days, or else face termination. RAWA's brief, of course, mentions none of its behavior because this behavior justifies, explains and gives

context to Judge Messitte's rulings on remand.

### 2.    RAWA's Overreaching Conduct Gave Judge Messitte No Choice But to Protect Mr. Schwartz's Rights on Remand.

"On remand, a trial court is free to 'make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not settled by the decision.'" *Casey,* 14 F.3d at 857. "[The trial court] may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision." *Id.*

Judge Messitte's rulings did not violate this Court's decision or the mandate rule, but rather, those rulings sought to protect the letter and spirit of the mandate. This Court's decision unquestionably gave Mr. Schwartz inviolate rights to a royalty-free Rent-A-Wreck franchise for the duration of his lifetime. In recognition of his rights, this Court remanded the case to another jury to determine whether Mr. Schwartz had yet another right – an exclusive territory in which he could operate his royalty-free franchise for the duration of his lifetime. Judge Messitte's rulings did nothing more than enforce this Court's mandate by, first, protecting Mr. Schwartz's rights from RAWA's post-remand attack on his business, and second, making the rulings necessary to try the exclusive territory question before a jury.

35

i.      **RAWA Selectively and Inconsistently Applies the Mandate Rule.**

Interestingly, RAWA does not argue that Judge Messitte violated the mandate rule when the district court's rulings advanced RAWA's interests (namely, putting Mr. Schwartz out of business).   Only when RAWA received an adverse ruling does it argue that mandate rule has been violated.

Case in point, by order dated January 23, 2013, Judge Messitte tentatively suggested that Mr. Schwartz was subject to the terms of the new 2011 Franchise Agreement. RAWA gave full credence to, and tried to extract the maximum benefit from, this order by demanding that Mr. Schwartz increase his fleet size by approximately 1600 vehicles (or 12 times its historical size) within 30 days. J.A. 525-27. RAWA went so far as to instruct Mr. Schwartz that "the [district court's January 23, 2013] Order is self-executing, and [your] obligation to comply indisputably began on January 23, 2013." J.A. 525.

RAWA's overreaching caused Judge Messitte to reverse himself by order dated Febraury 28, 2013. Whereupon, RAWA moved toalter or amend the district court's February 28, 2013 order, and to reinstate the district court's decision and order of January 23, 2013, which were favorable to it. *See* J.A. 52 (Doc. No. 438). On appeal to this Court, however, RAWA argues that the district court was not empowered to

36

make its January 23, 2013 rulings. Of course, RAWA's current argument before this Court – that the district court's January 23, 2013 order violates the mandate rule – is wholly inconsistent with its earlier plea to the district court to reinstate that same order that was favorable to it.

> ii.  **Judge Messitte's Rulings Implemented Both the Letter and Spirit of this Court's Mandate by Trying RAWA's Counter-claims to the Jury.**

There would have been no case to try before a jury on remand had Judge Messitte accepted RAWA's definition of this Court's mandate. That is because RAWA, relying on this Court's "same obligations" language from the prior opinion, coupled with the 2011 Franchise Agreement, would have terminated Mr. Schwartz's franchise before trial. Judge Messitte's rulings stopped RAWA's overreaching, and put the issue of the propriety of Mr. Schwartz's exclusive territory before the jury. As such, Judge Messitte's rulings did not violate the mandate rule.

**D.  Judge Messitte's Rulings Squarely Fall Under Two Exceptions to the Mandate Rule.**

The mandate rule is a "discretion-guiding rule" which is subject to exceptions in the interests of justice. *See, e.g., United States v. Bell*, 988 F.2d 247, 251 (4th Cir. 1993); *see also Cochran v. M & M Transp. Co.*, 110 F.2d 519, 521 (1st Cir. 1940)(warning against allowing the law of the case doctrine to become an instrument

of injustice). Those exceptions, which have been repeatedly and consistently recognized by this Court, are as follows:

> (1) that significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light; (2) that a blatant error in the prior decision will, if uncorrected, result in a serious injustice; or (3) a showing that controlling legal authority has changed dramatically.

*See Doe v. Chao,* 511 F.3d 461, 467 (4th Cir. 2007); *Invention Submission Corp.*, 413 F.3d at 415; *Bell,* 988 F.2d at 251; and *Bell,* 5 F.3d at 67.

### 1. RAWA Submitted Significant New Evidence (*i.e.* the 2011 Franchise Agreement) Only After This Court's March 9, 2012 Decision.

Here, the mandate rule did not constrain Judge Messitte from considering relevant "obligation and control issues" on remand as these matters involved new evidence, *i.e.* the 2011 Franchise Agreement, that RAWA failed to previously put before the district court and this Court. The 2011 Franchise Agreement was not revealed by RAWA until one week after this Court's March 9, 2012 ruling.

### 2. Mr. Schwartz Will Suffer a Serious Injustice if RAWA is Allowed to Place Him Under the Yoke of the 2011 Franchise Agreement.

As the district court said time and again, "throughout the litigation and especially since this case has been on remand, the [district court] has explicitly cautioned Rent-A-Wreck against attempts to deprive Schwartz, et al. of the benefit

38

of their judgment – that they are entitled to maintain a royalty-free Rent-A-Wreck franchise in a prescribed area of Los Angeles. The Court was and continues to be concerned that Rent-A-Wreck might 'use the Franchise Agreement as a pretext to unduly pressure Schwartz, et al in their normal business operations, or . . . try to drive [them] out of business.'" J.A. 556-57.

Judge Messitte made clear that binding Mr. Schwartz to a new, written contract of adhesion, the 2011 Franchise Agreement would be an injustice. Doing so would enable RAWA to: (1) terminate Mr. Schwartz's rights to use the Rent-A-Wreck name (rights which has taken seven years of litigation, and hundreds of thousands of dollars in attorneys' fees and costs to confirm); (2) bankrupt Mr. Schwartz by increasing his fleet size by 1,600 rental cars within 30 days or else face termination; (3) scrutinize Mr. Schwartz's personal and business finances; (4) tax Mr. Schwartz with RAWA's attorneys' fees;[9] and (5) preclude Mr. Schwartz from operating another venture in the rental car industry. Were this Court to apply the new 2011 Franchise Agreement to Mr. Schwartz, it would immediately sound the death knell for his current Rent-A-Wreck business, as well as his future aspirations to remain in the rental car business.

---

[9] Paragraph 15 of the 2011 Franchise Agreement provides that a franchisee must pay RAWA "all damages, costs and expenses, including reasonable attorneys' fees" that RAWA incurs "either before or following the termination of this Agreement, as a result of [the franchisee's] your default." *See* J.A. 238, ¶15(A). Mr. Schwartz never bargained-for a potentially costly obligation, and no jury or Court has or should hold him to that obligation.

39

RAWA has made plain its objective – to run Mr. Schwartz out of the rental car business. On remand alone, it has sent on four (4) separate letters seeking to terminate Mr. Schwartz's franchise rights. When the district court blocked its efforts, RAWA petitioned this court for mandamus so that it could terminate Mr. Schwartz's rights.

However, holding Mr. Schwartz to the terms of the new, written 2011 Franchise Agreement would not only fly against the jury's decision, but would negate the rights that Mr. Schwartz gained after seven (7) years of litigation in the district court, in this Court, and back before the district court, at trial. Reversing Judge Messitte's rulings would cause Mr. Schwartz extreme prejudice.

## E. This Court Already Considered and Rejected RAWA's Mandate Argument. This Court Should Stay True to Its Earlier Ruling.

On June 21, 2012, RAWA petitioned this Court for a writ of mandamus after the district court thwarted its attempt to terminate Mr. Schwartz's lifetime, royalty-free franchise. *See* J.A. 311-326. Therein, RAWA championed the same theory that it advocates here – that the district court's order exceeded the scope of this Court's mandate. On July 3, 2012, this Court denied RAWA's petition for writ of mandamus after full consideration of RAWA's arguments. *See* J.A. 1955. This Court should similarly deny RAWA's mandate argument for the reasons stated above.

## II. The District Court Prevented RAWA From Rewriting History and Its Contract with Mr. Schwartz.

### A. RAWA Does Not Conspicuously Cite Any Standard of Review. The Correct Standard of Review is Clearly Erroneous.

The District Court's orders must be affirmed unless entry of those orders was clearly erroneous. *See Allfirst Bank v. Progress Rail Servs. Corp.*, 521 Fed. App'x. 122, 127 (4th Cir. 2013) ("In this case, the parties disagree as to the terms of the oral agreement, the basis for the agreement, and the capacity in which Railcar acted in carrying out the agreement. Because the parties dispute the material facts of the alleged agreement, we find that the questions regarding the existence and the terms of the contract are questions of fact. We therefore will not reverse the district court's determination unless we find it clearly erroneous."); *see also* RAWA Brief, at 28 (arguing that orders are "clearly erroneous").

### B. RAWA, Rather Than Either Judge Messitte or Mr. Schwartz, Sought to Rewrite Mr. Schwartz's Franchise Rights.

RAWA's argument that Judge Messitte impermissibly rewrote Mr. Schwartz's contract is incredible when considering that RAWA's goal throughout this litigation has been to terminate its founder's business (which has operated since 1973) and to "to take everything that [Mr. Schwartz] own[s]." *See* J.A. 1207.

RAWA's out-of-context, self-serving obsession with the word "same," has

41

rendered it unable to appreciate the actual substance of this Court's ruling. This Court's opinion references a number of vintage documents as contributing to the overarching agreement between Schwartz and RAWA: the March 30, 1977 Letter Agreement (the "1977 Agreement"), the 1985 Agreement, the August 12, 1985 Prospectus ("Prospectus"), the August 11, 1987 Lease, and various Uniform Franchise Offering Circulars ("UFOCs"). *See Schwartz*, 468 Fed. App'x. at 241-42. From these documents, and more importantly, the parties' subsequent course of dealing, this Court found that Mr. Schwartz's implied franchise agreement began sometime "prior to 1993." *Id.* at 248, n.9. Tellingly, this Court further concluded, "the terms of the implied contract found by the jury are not at variance with the terms of any preexisting contract between the parties." *Id.* at 248. It follows, then, that the benefits and obligations may be discerned in the first instance by relying upon the "preexisting contract[s]" and other documents cited by this Court in support of the jury's determination. These vintage, pre-existing documents, and the subsequent course of dealing between the parties prior to 1993, should be the touchstone for determining the rights and duties between Mr. Schwartz and RAWA, not a 2011 Franchise Agreement that RAWA wishes to unilaterally impose only after the first jury rendered its verdict and after this Court made its ruling.

42

Thus, it is certainly not Judge Messitte, nor Mr. Schwartz, who have sought to rewrite Mr. Schwartz's contract, but rather, RAWA. RAWA exalts a single word as the substance of this Court's opinion, and seeks to leverage that word as a means to rewrite its corporate history and to deprive Mr. Schwartz of his contract rights at the same time. This Court should not allow RAWA to obtain the result by fiat that it could not gain at trial, or even on appeal.

Mr. Schwartz should not be harnessed under the yoke of RAWA's purported 2011 Franchise Agreement for a number of reasons beyond hardship and equities.

First, imposing the 2011 Franchise Agreement on Mr. Schwartz at the outset of this litigation (instead of waiting until after this Court's opinion) would have nullified RAWA's California-law based counter-claim for unlawful restraint of trade, and, thus, this entire remand. The 2011 Franchise Agreement plainly states that it is to be "governed by the laws of the State of Maryland," not the laws of California. *See* J.A. 242, ¶(G); J.A. 243, ¶(K). RAWA's claims and argument throughout this entire case are entirely inconsistent with its argument now – that the parties' relationship should be controlled by a 2011 Franchise Agreement that is expressly governed by Maryland law (which has no corollary to CAL. BUS. AND PROF. CODE § 16600).[10]

---

[10] Indeed, RAWA's 2011 Franchise Agreement ironically seeks to employ restraints upon trade that they have repeatedly rejected. The 2011 Franchise Agreement contains a covenant not to compete which prohibits a former franchisee, for two (2) years, from having "any interest as an

43

Second, RAWA's own corporate designee admitted that not each and every Rent-A-Wreck franchisee has signed the 2011 Franchise Agreement and few abide by it. In other words, were this Court to subject Mr. Schwartz to the 2011 Franchise Agreement, it would not be subjecting him to the "same obligations as other RAWA franchisees." *See, e.g.* J.A. 1104 (RAWA makes allowances for certain terms "on a legacy basis").

Third, it is plain from the first page of the 2011 Franchise Agreement that little would be left intact from the prior determinations of the jury, the district court and this Court. From the very first section of the Franchise Agreement to the personal Guaranty that concludes the document, the 2011 Franchise Agreement is replete with provisions that are either not applicable to Mr. Schwartz, or run counter to prior rulings of the jury, the district court, and/or this Court. Indeed, the document begins, "Rent-A-Wreck has developed a system for the operation of vehicle rental businesses . . . ." J.A. 218. Schwartz developed the Rent-A-Wreck business model. The next subsection, 1(B) labeled "Grant" is inapplicable, as it defines "Single Point Franchises" and "Primary Service Area Franchises" and purports to put limits on each

---

owner, partner, director, officer, employee, consultant, representative, agent, or in any other capacity, in any auto, truck, van, or other motorized rental business located within a 20 mile radius" of the former franchised location. J.A. 240 at ¶15(C). Such post-contract covenants not to compete are void under California law, *see, e.g., Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290-91 (9th Cir. 2009)(discussing *Dayton Time Lock Serv., Inc. v. Silent Watchman Corp.*, 124 Cal. Rptr. 678 (Cal. Ct. App. 1975)), but not necessarily Maryland law.

that cannot be imposed upon Schwartz. J.A. 218-19. The immediately following

subsection, labeled "Term," runs contrary to the holdings in this case, as the jury

specifically determined that the grant of a franchise to Mr. Schwartz was for his

lifetime. J.A. 219. Subsection 2(A), purporting to limit a franchisee (in this case, Mr.

Schwartz) to operations at a specific address and only that address, runs counter to

the 1985 Agreement, which allows him to relocate anywhere within his territory in

West Los Angeles. Compare J.A. 219 with J.A. 472, ¶7 ("the 1985 Agreement"

which was accepted by this Court).

With respect to the fleet requirements, contained in Section 3, RAWA seeks

to impose upon Mr. Schwartz requirements for the age and number of vehicles he

offers for rent, a control that was conspicuously absent from the parties' course of

dealing from the early 1970s until this litigation commenced. *See* J.A. 220. Of

course, RAWA has already demonstrated that it desires to use these never bargained-

for Fleet Requirements as the means to end Mr. Schwartz's business. *See* J.A. 525-27

(Feb. 4, 2013 letter from RAWA's counsel to Mr. Schwartz's counsel). Section 4

cannot be enforced on Schwartz, as it sets out franchise fees and royalty payments.

J.A. 220-222. The document continues on, providing that RAWA will "train " Mr.

Schwartz how to operate the business-model that he created and founded. J.A. 222.

Incredibly, RAWA clings to the suggestion that Mr. Schwartz must be trained in the

business model that he developed and has implemented for more than 40 years. *See* J.A. 526 ("Schwartz will be required to submit to such training as well.").

From this most cursory review, it is evident that RAWA overreaches when it claims that this Court's opinion supports its efforts to force the 2011 Franchise Agreement upon Mr. Schwartz. That document contravenes agreements that governed the parties' relationship for parts of five decades prior to the onset of litigation.

This Court upheld the validity of the 1985 Agreement, the Prospectus, the UFOCs, and the parties' course of dealing, all as evidencing the franchise agreement found by the jury. To ignore that evidence now in favor of an agreement that was never considered by the jury is tantamount to rewriting the ultimate holding of the first jury, the second jury and this Court - that Mr. Schwartz has a lifetime, exclusive, royalty-free Rent-A-Wreck franchise.

## III.   The District Court Correctly Assigned RAWA the Burden to Prove its Anti-Trust Claim.

Mr. Schwartz agrees with RAWA that this Court reviews *de novo* whether or not Judge Messitte properly assigned RAWA with the burden to prove its anti-trust claim. As set forth below, Judge Messitte's decision was correct.

**A.      A Litany of Case Law Holds that RAWA, as the Anti-trust Plaintiff, Has the Burden to Prove Its Claim.**

RAWA's sole remaining amended counter-claim seeks a declaratory judgment that the exclusive territory that it granted to Mr. Schwartz decades ago is actually an unlawful restraint of trade, void and unenforceable under §16600 of the California Business and Professions Code. RAWA's counterclaim is an anti-trust claim.[11]

In anti-trust cases, the plaintiff – here RAWA – bears the burden of proving that the complained-of conduct has the requisite anti-competitive effect. *See, e.g., United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 374 n. 5 (1967)(**The burden of proof in antitrust cases remains with the plaintiff**); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1001 (9th Cir. 2008)(discussing **plaintiff's burden of proof** by preponderance of the evidence for Cartwright Act claim); *United States v. Microsoft Corp.*, 253 F.3d 34, 58-59 (D.C. Cir. 2001) ("**the plaintiff, on whom the burden of proof of course rests** [citations] must demonstrate that the monopolist's conduct indeed has the requisite anticompetitive effect); *Exxon Corp. v. Superior Ct.*, 60 Cal. Rptr. 2d 195, 200 (Cal. Ct. App. 1997) ("it is **plaintiff's**

---

[11] *See Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1293, n. 17 (9th Cir. 2009) ("Both [CAL. BUS. PROF. CODE] §16600 and the Cartwright Act deal with antitrust and competition policy . . . ."); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991,1001 n. 3 (9th Cir. 2008)("Because California's Cartwright Act is patterned after federal antitrust acts like the Sherman Antitrust Act, California courts often cite federal antitrust cases when interpreting the Cartwright Act.").

47

**burden** to make the required showing of a 'substantially adverse effect on competition in the relevant market.'"); *Roth v. Rhodes*, 30 Cal. Rptr. 2d 706, 712 (Cal. Ct. App. 1994)("To meet his initial burden in establishing that the practice is an unreasonable restraint of trade, **plaintiff must show** that the activity is the type that restrains trade and **that the restraint is likely to be of significant magnitude**.'"); *Bert G. Gianelli Distrib. Co. v. Beck & Co.*, 219 Cal. Rptr. 203, 218 (Cal. Ct. App. 1985)("While it is undisputed that to prevail at trial under a rule of reason, **plaintiffs must prove** that the alleged anticompetitive effects on intrabrand competition outweigh any pro-competitive effects on interbrand competition of the restraint . . . ."); *Donald B. Rice Tire Co., Inc. v. Michelin Tire Corp.*, 483 F. Supp. 750, 761 (D. Md. 1980)(**Plaintiff failed to meet its burden** of establishing that the defendant's actions had anticompetitive consequences)(emphasis supplied to all).

Importantly, in *Fisherman's Wharf Bay Cruise Corp. v. Superior Ct.*, 7 Cal. Rptr. 3d 628 (Cal. Ct. App. 2003),[12] the burden of proof was clearly delineated to be on the party seeking to avoid the exclusivity arrangement. In that case, Red and White sought to void the exclusive dealing arrangements of its competitor, Blue & Gold. The *Fisherman's Wharf* court stated that Red and White had to "evince a substantially

---

[12] In the first appeal, this Court found *Fisherman's Wharf* instructive, and chose to followed its teachings. *See Schwartz*, 468 Fed. App'x. at 251.

adverse effect on competition in the relevant market to support a viable legal theory." *Id.* at 650 (citations omitted). Here, RAWA, as the party alleging anti-trust injury, must do the same.

The burden of proof in antitrust-inquiries into exclusive dealing arrangements also falls on plaintiffs, here RAWA. *See Theme Promotions, Inc.*, 546 F.3d at 1001 (discussing that person opposing restraint of trade under Cartwright Act, Cal Bus. & Prof. Code § 16720, *et seq.* would need to prove by a preponderance of the evidence that provisions agreed to constituted restraint of trade); *Dayton Time Lock,* 124 Cal. Rptr. at 681-82 (plaintiff contended anti-competitive provisions of agreement violated state and federal antitrust laws; plaintiff did not develop material evidence on these issues at trial). The party challenging the exclusive arrangement must show that it substantially affects competition.

## B.    RAWA's Two Cases and Supposition Are Unavailing.

RAWA's opening brief fails to distinguish this overwhelming case law as cited in Judge Messitte's Order (J.A. 815) and/or in Mr. Schwartz's prior briefing.

Instead of addressing the aforementioned case law, RAWA relies upon two inapposite cases that do not squarely address the burden of proof, and also upon sheer supposition in order to argue that Mr. Schwartz carries the burden of proof on RAWA's anti-trust claims.

49

RAWA argues that *Scott v. Snelling*, Inc., 732 F. Supp. 1034 (N.D. Cal. 1990) suggests that Mr. Schwartz must carry the burden of proof on RAWA's claim. However, *Scott* does not assign the burden of proof. In fact, the *Scott* case avoids the issues altogether by initially stating that "the allocation of burdens of proof is irrelevant, for the most part," as it was dealing with a question of law and cross-motions for summary judgment. *Id.* at 1038. The *Scott* court went on to state that the restrictive covenant could be enforced if the competition it foreclosed was unfair competition, because, for example, it involved use of trade secrets. The court held that the burden was on Snelling as "the party asserting the existence of a trade secret." *Id.* Snelling would have the burden at trial of demonstrating he had a trade secret. *Id.* at 1043. The fact that Snelling bore the burden of showing the existence of a trade secret, and thus the burden of showing that unfair competition through the use of trade secrets would result if the covenant was not enforced, does not mean that in a non-trade secret case the burden should be placed on the person seeking to uphold the covenant. There is no reason to read *Scott* so expansively.[13]

---

[13] It is true that *Scott*, a 1990 U.S. District Court case from California, dealt with Cal. Bus. & Prof. Code § 16600, whereas *Fisherman's Wharf*, a 2003 California state appellate decision, interpreted a comparable statute, Cal. Bus. & Prof. Code § 16720 *et seq*. Whatever a federal court interpreting state law may have said 24 years ago (*Scott*) is clearly trumped by what a state appellate court interpreting a comparable state law provision said 10 years ago (*Fisherman's Wharf*). In any event, this Court chose to "follow[]" *Fisherman's Wharf* when resolving whether the exclusive territory at issue would foreclose competition in a substantial share of the market for rental cars. *See Schwartz*, 468 Fed. App'x. at 251.

50

RAWA's second case, *Lifestyle Improvement Centers, LLC, v. East Bay Health, LLC*, No. 2:13-cv-735, 2013 U.S. Dist. LEXIS 144685 (S.D. Ohio Oct. 7 2013) suffers from the same infirmity. Unlike the litany of cases cited *supra*, neither *Scott* nor *Lifestyle Improvement Centers* held that the anti-trust defendant, here, Mr. Schwartz, had the burden of proof on plaintiff's anti-trust claim.

Further, it is patently obvious that this Court's opinion did not assign Mr. Schwartz the burden of proof on RAWA's claim. To make the argument, RAWA (again) overreaches by reading into this Court's opinion an obligation on Mr. Schwartz that simply does not exist. *See* RAWA's Brief, 33 ("**Though this Court's earlier decision does not directly address the issue**, it **appears** to place the burden on Schwartz . . . .")(emphasis supplied).

## IV.    The District Court Did Not Prevent RAWA From Presenting Admissible, Relevant Evidence to the Jury that Mr. Schwartz's Exclusive Territory Foreclosed Competition in a Substantial Share of the Los Angeles Rental Car Market. RAWA Could Not Present its Case Because it Had No Case to Present.

### A.    RAWA Has Cited the Incorrect Standard of Review. The Correct Standard of Review is Abuse of Discretion.

RAWA challenges Judge Messitte's evidentiary ruling by arguing that he wrongly precluded it from presenting evidence to the jury. *See* RAWA Brief at 35. The standard of review for evidentiary rulings is abuse of discretion – not *de novo* as

RAWA has suggested. *See e.g., Bryte ex rel. Bryte v. Am. Household, Inc.*, 429 F.3d 469, 475 (4th Cir. 2005) (In ruling on the admissibility or exclusion of evidence, the district court has broad latitude.); *United States v. Moore*, 27 F.3d 969, 974 (4th Cir. 1994) ("A district court's evidentiary rulings are entitled to substantial deference and will not be reversed absent a clear abuse of discretion."); *United States v. Whittington*, 26 F.3d 456, 465 (4th Cir. 1994) ("A district judge may exclude relevant evidence where 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . .' Fed. R. Evid. 403. Such determinations by trial courts are granted substantial deference and are reviewed for a clear abuse of discretion."); *United States v. Gravely*, 840 F.2d 1156, 1163 (4th Cir. 1988) (noting that trial courts are "vested with broad discretion to control the mode of interrogation and presentation of evidence to insure that witnesses are treated fairly and the search for truth is not impaired by presentation of extraneous, prejudicial or confusing material")) (internal citations and quotations in original).

RAWA cites *Wall v. Wade*, 741 F.3d 492 (4th Cir. 2014) in support of its argument that the district court's evidentiary ruling should be review *de novo*. This Court's decision in *Wall*, however, has no application and is not instructive here.

In *Wall*, this Court reviewed two questions of law decided by the district court: (1) whether the district court correctly determined that an inmate's claims were moot and (2) whether the district court correctly granted the facility and officers qualified immunity on one of the inmate's claims. This Court held noted that "[b]oth issues are questions of law which we review de novo." *Id.* at 496.

Obviously, the questions of law at issue in *Wall* have no applicability to Judge Messitte's discretionary evidentiary ruling, here.

**B.    The District Court Repeatedly Encouraged RAWA to Present a Case to the Jury Which Comported With this Court's Mandate, RAWA's Pleadings and Principles of Common Sense. RAWA Simply Refused.**

**1.    RAWA Tried to Put a Case Before the Jury that Was Radically Different From this Court's Instructed Remand.**

This Court held that the affected line of commerce is "rental cars." *Schwartz*, 468 Fed. App'x. at 251. Taking a cue from this Court, RAWA amended its counter-claim to allege, "**The line of commerce** in which the parties and Rent-A-Wreck franchises are engaged **is the rental and leasing of used motor vehicles** that are less than eight years old." J.A. at 559, ¶5 (emphasis supplied). RAWA then "contend[ed] that the Exclusive Territory paragraph is void and unenforceable under California law because it forecloses a substantial share of the **market for renting used motor vehicles**." J.A. at 560, ¶9 (emphasis supplied).

53

Just before trial, however, RAWA attempted to radically deviate from this

Court's holding, and its pleadings, by defining the "line of commerce" in a wholly

different fashion. RAWA submitted its proposed Pre-trial Order, wherein for the first

time, it argued that affected line of commerce is "the sale of Rent-A-Wreck brand

franchises," not rental cars. J.A. 790.

Judge Messitte properly precluded RAWA from contorting the market

definition in such a fashion as (a) to violate this Court's mandated market (*i.e.* rental

cars), and (b) to ensure that RAWA would win without the need for a remand trial.

Indeed, after careful consideration of the parties' submissions, Judge Messitte paid

deference to this Court's opinion by noting that the Fourth Circuit has referred only

to a "market for rental cars." J.A. 786.

Judge Messitte explained his common sense decision that RAWA's newly

proposed market definition was "far-fetched" as follows:

> In this case, [RAWA], among other things, wish to show
> and argue that other RAWA franchisees are precluded from
> entering [Mr. Schwartz's] franchise area. But that is the
> very purpose of an exclusive franchise (which is legal
> under California law) . . . . By [RAWA's] definition, [Mr.
> Schwartz] lose[s] automatically. . . . But [RAWA] will not
> be able to present evidence or argue that potential RAWA
> franchisees are excluded from [Mr. Schwartz's] franchise
> territory. That goes without saying.

J.A. 786-787.

In other words, Judge Messitte refused to allow RAWA to argue to the jury that the market at issue here is "the sale of Rent-A-Wreck brand franchises," and then argue that Mr. Schwartz's exclusive territory foreclosed RAWA from selling franchises in his territory. Were the Court to have allowed RAWA to make such an argument, Mr. Schwartz would have lost out of the gate. Excluding other RAWA franchisees is the entire purpose of granting Mr. Schwartz an exclusive territory. Under RAWA's analysis, no trial would have been necessary (which, ironically, would have violated this Court's mandate).

Judge Messitte's measured, common sense approach did not preclude RAWA from putting on its case. Indeed, Judge Messitte repeatedly implored RAWA before and during trial to put on evidence that comported with the mandate in support of its case. For example, during the May 21, 2013 Pre-Trial Conference, Judge Messitte expressly told RAWA's counsel and corporate designee that RAWA would not be precluded from presenting a case on market foreclosure. *See* J.A. 821. Instead, Judge Messitte advised RAWA that the market foreclosure theory that they had advanced was flawed because Mr. Schwartz's territory, by its very definition, permissibly sought to exclude other Rent-A-Wreck franchisees from competing therein. *Id.* Judge Messitte, for example, left open RAWA's ability to show that Mr. Schwartz's territory foreclosed competition as a whole in the Los Angeles rental car market. *Id.*

After the Pre-Trial Conference, Judge Messitte further encouraged RAWA to present a viable case to the jury by Ordering:

> Please understand: The Court has only ruled that [RAWA] may not argue that [Mr. Schwartz's] exclusive franchise forecloses competition in that it prevents other Rent-A-Wreck-of-America, Inc. ("RAWA") franchises from competing in that territory. As previously stated, in the Court's view the very definition of an exclusive franchise-which the Fourth Circuit held [Mr. Schwartz] have-is that it prevents others of the same franchise from being in the exclusive franchisee's territory. **However, [RAWA is] free to argue that [Mr. Schwartz] forecloses competition by other than RAWA franchisees in an appropriate market for rental cars in whatever way they so choose, defining that market as rental cars, rental cars older than 8 years old, etc.**

J.A. 823 (emphasis supplied).

Judge Messitte, in the opening remarks before trial, again encouraged RAWA to put evidence of any market control by Mr. Schwartz before the jury. *See* J.A. 930-31. RAWA, again, flatly refused, and steadfastly argued that "the line of commerce" is the "sale of Rent-A-Wreck franchises" even though this Court squarely held differently. J.A. 932. As a result, RAWA conceded that it would not present evidence that the operation of Mr. Schwartz's business foreclosed other non-Rent-A-Wreck businesses from competing in the car rental market in Los Angeles, California. *See* J.A. 933.

56

As is plain, RAWA's abandonment of their market foreclosure argument was not forced by Judge Messitte, but instead, resulted from RAWA's inability to prove a viable claim at trial. The uncontradicted facts, as presented by Mr. Schwartz, show that his rental car business has a *de minimus* impact on the rental car market in Los Angeles.[14] The jury, using common sense, unanimously found that Mr. Schwartz's one location of 150 rental cars does not foreclose competition in a substantial share of the robust rental car market in Los Angeles. *See* J.A. 902.

---

[14] *See, e.g.,* J.A. 1080 (Mr. Schwartz's customarily maintained a fleet of approximately 150 rental cars); J.A. 1217 (Mr. Schwartz's rental car operation is just one of 130 rental car businesses in his territory); J.A. 1953 (map showing Mr. Schwartz's one rental car local amidst the 130 rental car businesses in his territory).

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a), and Local Rule of Appellate Procedure 34(a), this Court should dispense with oral argument because the dispositive issues in this appeal, which are adequately presented in the briefs and record, have been properly and authoritatively decided by the district court. Oral argument would not aid this Court's decisional process.

Each and every of RAWA's four (4) points in favor of granting oral argument are unpersuasive. First, RAWA argues that oral argument should be granted to ensure consistency with this Court's first decision. Second, RAWA argues that oral argument should be granted because this appeal considers whether the district court violated the mandate rule. This second argument is a mere rephrasing of the first argument. Both arguments fail because the Judge Messitte, a seasoned member of the bench, conducted the remand proceeding and trial in accordance with the letter and spirit of this Court's mandate. RAWA's displeasure that yet another jury ruled in favor of Mr. Schwartz is no basis for another oral argument to this Court.

Third, RAWA argues that oral argument should be granted because the district court improperly placed the burden of proof on it. As noted above, the district court's decision to place the burden on proof on RAWA, an anti-trust plaintiff, is supported by a litany of applicable jurisprudence spanning all tiers of state and federal courts.

58

Oral argument will not further clarify this well-established legal precedent.

Fourth, and lastly, RAWA argues that oral argument should be granted because "this case has a somewhat involved procedural history." RAWA's Brief, at 38. Mr. Schwartz submits that the reviewing panel of this Court is more than capable of understanding the path that this case has taken to this Court by reviewing Mr. Schwartz's brief which lays out the procedural history of this case in great detail. Furthermore, the entire procedural history of this case is chronicled in the parties' Joint Appendix, were the Court to require further clarification. *See* J.A. 1-58. Oral argument is not necessary to chronicle the procedural history of this case.

Dated this 5th day of May, 2014.

> Respectfully submitted,
>
> /s/ Jacob I. Weddle, Esq.
> Roger C. Simmons, Esq.
> Jacob I. Weddle, Esq.
> GORDON & SIMMONS, LLC
> 1050 Key Parkway, Suite 101
> Frederick, Maryland 21702
> (301) 662-9122
> *Counsel for Plaintiffs/Appellees*
> *David D. Schwartz and Rent A Wreck, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-2189        Caption: David S. Schwartz et al. v. Rent-A-Wreck of America, In

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]  this brief contains ____13,620____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]  this brief has been prepared in a proportionally spaced typeface using
        Word Perfect _____ [*identify word processing program*] in
        14-point, Times New Roman font ____ [*identify font size and type style*]; **or**

   [ ]  this brief has been prepared in a monospaced typeface using
        _____ [*identify word processing program*] in
        _____ [*identify font size and type style*].

(s) Jacob I. Weddle, Esq. _____

Attorney for **Appellees** _____

Dated: May 5, 2014 _____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2189__    Caption: David S. Schwartz et al. v. Rent-A-Wreck of America, Inc. et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

David S. Schwartz
(name of party/amicus)

who is _____ Appellee _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                                                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                                                            ☐ YES ☑ NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Jacob I. Weddle, Esq.                    Date:    May 5, 2014

Counsel for: Appellees

## CERTIFICATE OF SERVICE
**************************

I certify that on    May 5, 2014    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Jacob I. Weddle, Esq.                              May 5, 2014
        (signature)                                       (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-2189      Caption: David S. Schwartz et al. v. Rent-A-Wreck of America, Inc. et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Rent A Wreck, Inc.
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                               ☐ YES ☑ NO
    If yes, identify all such owners:

10/28/2013 SCC

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Jacob I. Weddle, Esq.                     Date:    May 5, 2014

Counsel for: Appellees

## CERTIFICATE OF SERVICE
***************************

I certify that on ____ May 5, 2014 ____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Jacob I. Weddle, Esq.                          May 5, 2014
        (signature)                                   (date)

# CERTIFICATE OF SERVICE

I certify that on   May 5, 2014   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Jacob I. Weddle, Esq.

Signature

May 5, 2014

Date